# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MARTIN HYING,

               Plaintiff,

v.

ANNA MARIA HODGES, DENITA
R. BALL, DENNIS FLYNN, CARL
ASHLEY, AUDREY SKWIERAWSKI,
and ANNETTE K. ZIEGLER,

               Defendants.

Case No. 23-CV-1361-JPS

**ORDER**

## 1.      INTRODUCTION

In October 2023, Plaintiff Martin Hying ("Plaintiff") sued Anna Maria Hodges (Clerk of Milwaukee County Circuit Court) ("Hodges"), Denita R. Ball (Milwaukee County Sheriff) ("Ball"), Dennis Flynn (then-reserve circuit court judge in Milwaukee County) ("Flynn"), Carl Ashley (Chief Judge of Milwaukee County Circuit Court) ("Ashley"), Audrey Skwierawski (Interim Director of Wisconsin State Courts) ("Skwierawski"), and Annette K. Ziegler (Chief Justice of Wisconsin Supreme Court) ("Ziegler"). ECF No. 1. He purports to sue for, inter alia, violation of his First Amendment right to petition his government, for "false arrest, detainment, invalid use of legal authority, and abuse of process," and malicious prosecution. *Id.* at 2–4.

Defendants Ashley, Flynn, Skwierawski, and Ziegler (the "State Defendants"), as well as Ball and Hodges (the "County Defendants"), move to dismiss the claims against them. ECF Nos. 28, 31. For the reasons

discussed herein, the Court grants both the State Defendants' and County Defendants' motions to dismiss, but grants Plaintiff leave to amend his complaint to attempt to state a conditions-of-confinement claim and a claim for unlawful detention from August 17, 2023 to August 21, 2023, as discussed herein. Plaintiff also moves "for [a] hearing, but the filing is, in substance, more akin to an unauthorized sur-reply to the briefing on Defendants' motions to dismiss. ECF No. 40.[1] The Court will accordingly deny that motion.

## 2. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b) provides for dismissal of complaints which, among other things, fail to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81.

---

[1]The motion also attempts to re-hash arguments regarding Flynn's status as a reserve judge. The Court has already addressed such arguments and rejected them. ECF No. 27.

3. **FACTUAL BACKGROUND**

Plaintiff's complaint relates to his "civil family lawsuit, Milwaukee County case 2006FA6891," which at separate points was overseen by Judges Ashley and Flynn. ECF No. 1 at 2; *see also In Re: The Marriage of Kimberly C. Hying and Martin B. Hying,* Milwaukee County Circuit Court Case No. 2006FA006891, *available at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2006FA006891&county No=40 (last visited May 8, 2024) (hereinafter "Case No. 2006FA6891").[2] Plaintiff and his then-spouse were granted a divorce in November 2007. The docket reflects that Plaintiff continues to owe a money judgment imposed in June 2009; that he repeatedly failed to pay as ordered guardian ad litem fees and attorney's fees; that he was on multiple occasions found in contempt for nonpayment, including in March 2010, February 2011, November 2014, and August 2015; that he was subjected to escalating contempt sanctions, including imposition of a six-month jail sentence; that he was on multiple occasions "denied permission to proceed . . . [on] appeal" and that the appellate court clerk was at one point instructed to take "[n]o further action . . . on [Plaintiff's] filings"; and that he was on

---

[2]The Court takes judicial notice of this state court case and the docket entries therein for purposes of contextualizing Plaintiff's claims and providing relevant background. *Ennenga v. Starns,* 677 F.3d 766, 773–74 (7th Cir. 2012) ("A court may take judicial notice of facts that are (1) not subject to reasonable dispute and (2) either generally known within the territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned . . . . Here, the court took judicial notice of the dates on which certain actions were taken or were required to be taken in the earlier state-court litigation—facts readily ascertainable from the public court record and not subject to reasonable dispute." (citing *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.,* 128 F.3d 1074, 1081 (7th Cir. 1997) and *Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir. 1994) (noting that judicially-noticed matters of public record may be considered on a motion to dismiss)).

several occasions subject to commitment orders, which could be purged upon payment of the sums owed. The most recent entries on the docket for Case No. 2006FA6891 reflect an August 21, 2023 order cancelling the commitment order and warrant/capias against Plaintiff. Case No. 2006FA6891.

Plaintiff alleges in the instant case that when he attempted to file documents in Case No. 2006FA6891 at approximately noon on August 14, 2023, an unnamed Milwaukee County Circuit Court clerk noted the case number, returned the papers to him, left his view, and ceased assisting him for a period of 5–10 minutes. ECF No. 1 at 2. No other staff attended to him during this time, although staff assisted other individuals at the same window. *Id.* Shortly thereafter, Plaintiff alleges that two non-party Milwaukee County Sheriff's Deputies appeared and arrested him, claiming that the computer indicated that "there [wa]s a warrant for [him]." *Id.*

Plaintiff alleges that he was ordered to surrender his papers and belongings and was handcuffed, searched, and booked into the Milwaukee County Jail, purportedly for reasons unknown to him, although he later acknowledges that he was subject to a "commitment order" which he describes as "invalid." *Id*. at 3, 4. Plaintiff alleges that at no point during his arrest did "anyone indicate . . . why a warrant would preclude [the] filing of any papers in [his] court case." *Id.* at 2.

The County Defendants have filed a copy of the "Warrant Detail," issued on July 18, 2022 and with an expiration date of July 14, 2024.[3] ECF

---

[3]"In addition to the allegations set forth in the [c]omplaint itself," the court may consider on a motion to dismiss "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *O'Brien v. Village of Lincolnshire*, 955 F.3d 616, 621 (7th Cir. 2020) (quoting *Williamson v. Curran*, 714

No. 32-2. The document lists the subject as "Hying, Martin B" and authorizes a sixty-day commitment at "HOC or Racine County w/ Huber privileges"[4] for "contempt of court" for "failure to pay." *Id.* It also states: "$9,480 purge (plus fees) due and owing." *Id*.

Plaintiff also alleges that during and following his arrest he was denied access to his "communications devices," was unjustifiably disallowed from transferring to Racine County Jail, disallowed from exercising his Huber privileges, deprived of food for 24 hours, and inexplicably placed in isolation in "infested, unclean cell[s]." ECF No. 1 at 3–4. He asserts that "[o]nly after 52 hours passed after [his] initial arrest was [he] finally able to contact someone" outside the jail. *Id.* at 3. He asserts that this treatment "constitutes cruel and unusual punishment [in] violation of [his] 8th and 14th [A]mendment rights." *Id.* He also claims that he "was intentionally moved around to ensure that it would be difficult" for him to exercise his legal rights. *Id.*

Plaintiff alleges that on August 17, 2023, he paid the $9,480 owed to his "ex-wife's attorney" to purge the commitment order so that he could be released but that he nevertheless "remained incarcerated" and was not released until August 21. *Id.* at 4. Plaintiff questions why his payment was not promptly "forwarded" from the Clerk of Court to his ex-wife's attorney

---

F.3d 432, 436 (7th Cir. 2013)). The warrant is central to and referred in the complaint. Accordingly, the Court may consider it at the motion to dismiss stage.

[4] Huber privileges refers to work release. *See Jackson v. Jail,* No. 23-cv-214-jdp, 2023 U.S. Dist. LEXIS 76365, at *1 (W.D. Wis. May 1, 2023) ("The 'Huber law,' Wis. Stat. § 303.08, 'governs work release privileges for Wisconsin county jail inmates.' . . . Huber prisoners may be housed in minimum security dormitories and permitted to work at regular outside employment during daytime hours." (quoting *Domka v. Portage County,* 523 F.3d 776, 778 (7th Cir. 2008) and citing *Kish v. Milwaukee County,* 441 F.2d 901, 903 n.10 (7th Cir. 1971))).

and speculates that the delay was attributable both to "underqualified participants" in the state court system and to their desire to "deprive [him] of [his] liberties to obtain their proverbial pound of flesh from [him]." *Id.* Plaintiff avers that he submitted citizen complaint grievances regarding this situation on August 24, 2023 but that no disposition of his complaints has ever resulted. *Id.* He also alleges that he filed a notice of claim "with the Attorney General via certified mail." *Id.*

According to Plaintiff, the "Director of state courts intentionally allows" under- and unqualified personnel to access the court computer system to create false records. *Id.* Plaintiff alleges that this has been happening "for years" in Case No. 2006FA6891 under the "supervision and approval" of Ashley. *Id.* Plaintiff alleges that Ashley "refuses to administratively assign [his] case to a legitimate state court branch" and has "fabricated false records" regarding Case No. 2006FA6891. *Id.* at 4 & n.2. He also alleges that Flynn is "neither an elected nor gubernatorially appointed judge" and therefore cannot exercise judicial authority over Case No. 2006FA6891. *Id.* at 4, 5.

As relief, Plaintiff asks, inter alia, that the Court enforce his "first amendment right to petition [his] state government by allowing him" to file papers in Case No. 2006FA6891; that the Court instruct the parties and the Wisconsin State Court system to comply with Wisconsin constitutional and legislative mandates regarding "judge subcategories and corresponding appointment limitations"; that the Court order "the immediate return of the" sum Plaintiff paid to his ex-wife's attorney, as well as the return of "all costs, fees, and payments collected" in Case No. 2006FA6891 "since [] Flynn first started impersonating a reserve judge in th[at] case"; and that the Court declare "Wisconsin's archaic and outdated practice of Diploma Privilege to

be unconstitutional" and impose a bar passage requirement as a requisite to both the practice of law and judicial service in Wisconsin. *Id.* at 5–6.

**4.     LITIGATION HISTORY**

The Court takes the opportunity to note that this not the first time that Plaintiff has brought concerns related to Case No. 2006FA6891, and related to the Wisconsin State Judiciary in general, before this District. In March 2016, he sued, inter alia, Flynn and Ashley, similarly alleging an unlawful denial of his access to the state courts and an "unlawful detainment." *See Martin Hying v. Carl Ashley et al.*, No. 2:16-CV-00313-DEJ (E.D. Wis. 2016), ECF No. 1 ("Case No. 2:16-CV-00313-DEJ"). He therein took issue with a myriad of actions taken in Case No. 2006FA6891 by Flynn and Ashley, including an alleged refusal to transfer records to the Court of Appeals and alleged falsification of court records. *Id.* at 6, 8. In March 2017, Magistrate Judge David E. Jones granted Defendants' motions to dismiss that case, concluding that Flynn and Ashley were subject to judicial immunity. *Id.*, ECF No. 21 at 7–11.

Plaintiff again sued Flynn, among others, in September 2021. *See Martin Hying v. Dennis Flynn et al.*, No. 2:21-CV-001129-BHL (E.D. Wis. 2021), ECF No. 1 ("Case No. 21-CV-001129-BHL"). In that case, Plaintiff again alleged falsification of records, as well as ex parte communications, "non-jurisdictional hearings," and bias against him as a pro se party in Case No. 2006FA6891. *Id.* at 4. He also attempted to raise a claim related to Wisconsin's diploma privilege practice. *Id.* at 4–5 (referencing "an underqualified judiciary that practices via diploma privilege" which practice "should be declared unconstitutional"). In March 2022, Judge Brett Ludwig granted Defendants' motions to dismiss and dismissed the case on

the merits, relying in part on the application of judicial immunity. *Id.*, ECF No. 20 at 2.

5.     **ANALYSIS**

     **5.1     The Attempt at Filing**

The Court first addresses Plaintiff's allegation that an unnamed Milwaukee County Circuit Court clerk[5] unconstitutionally denied him access to the courts when the clerk failed to file the papers he provided to her for filing in Case No. 2006FA6891. For the reasons discussed herein, the Court will dismiss this claim with prejudice for failure to state a claim.

"The right of access to the courts is the right of an individual, whether free or incarcerated, to obtain access to the courts without undue interference." *Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004). "[E]fforts by state actors to impede an individual's access to courts . . . may provide the basis for a constitutional claim under 42 U.S.C. § 1983." *Vasquez v. Hernandez*, 60 F.3d 325, 328 (7th Cir. 1995).

The Court first addresses the County Defendants' contention that the domestic relations exception, or, alternatively, the *Rooker-Feldman* doctrine, precludes the Court from addressing this claim.[6] "[T]he *Rooker-Feldman*

---

[5]Although Plaintiff names Hodges as a Defendant, he does not claim that she was the clerk who failed to file his papers. He alleges no personal involvement whatsoever on her part in the events at issue. It is not enough that a defendant's subordinates allegedly committed constitutional violations, for even supervisory liability requires personal involvement on the part of the supervisor defendant. *Milchtein v. Milwaukee County*, 42 F.4th 814, 824 (7th Cir. 2022) (citing *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017)). On this basis alone, the claim—to the extend it was even directed at Hodges—can be dismissed.

[6]County Defendants did not address the merits of any of Plaintiff's asserted claims for relief, relying instead on the argument that the Court lacks jurisdiction to hear those claims and on the argument that neither of the named County

doctrine bars federal jurisdiction when the federal plaintiff alleges that her injury was caused by a state court judgment." *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir. 2000) (citing *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999); *Centres, Inc. v. Town of Brookfield*, 148 F.3d 699, 702 (7th Cir. 1998); and *Garry v. Geils*, 82 F.3d 1362, 1365–66 (7th Cir. 1996)). Meanwhile, "the domestic-relations exception to federal jurisdiction blocks federal adjudication of cases involving 'divorce, alimony, and child custody decrees.'" *Syph v. Arce*, 772 F. App'x 356, 357 (7th Cir. 2019) (quoting *Marshall v. Marshall*, 547 U.S. 293, 307–08 (2006)).

The County Defendants contend that these doctrines preclude the Court's consideration of Plaintiff's right to access claim because they believe Plaintiff is "ask[ing] this Court [to] 'intervene in a contested domestic-relations matter that has been reserved to the state court'" and because "the only injuries of which he complains all arise from his [f]amily [l]aw [c]ase . . . ." ECF No. 32 at 4–5 (quoting *Zawistowski v. Kramer*, 820 F. App'x 481, 483 (7th Cir. 2020)).

It is true that the Court is precluded from exercising "federal jurisdiction over claims 'inextricably intertwined' with a state court determination." *Remer*, 205 F.3d at 996 (citing *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 483–84 n.16 (1983); *Long*, 182 F.3d at 554; and *Centres, Inc.*, 148 F.3d at 702). But "it can be difficult to discern which claims are and which claims are not 'inextricably intertwined' with a state judgment," and the County Defendants fail not only to meaningfully engage with that aspect of the analysis, but to acknowledge it at all in their roughly five-page brief. *Id.*

---

Defendants were personally involved in the events at issue. *See generally* ECF No. 32.

(citing *Centres, Inc.*, 148 F.3d at 702 and *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993)). "[T]he crucial point" with respect to that aspect of the analysis is "whether 'the district court is in essence being called upon to review the state-court decision.'" *Id.* (quoting *Ritter*, 992 F.2d at 754).

Whether Plaintiff's right to access claim is truly "an independent claim," *id.* (quoting *Long*, 182 F.3d at 555), does not appear to be as black and white as the County Defendants would have the Court believe. They insist that Plaintiff's injuries arose, with respect to this right to access claim, from the state court's commitment order. ECF No. 32 at 4–5. But neither Plaintiff nor the County Defendants suggests that the commitment order simultaneously functioned as a filing bar such that by its operation Plaintiff would not only be subject to incarceration, but also that he would be prohibited from filing in that case. Indeed, the document itself, ECF No. 32-2, makes no note of such a restriction. In other words, it is not at all clear that Plaintiff's right to access claim is "inextricably intertwined" with the state court's judgment. *Remer*, 205 F.3d at 996. Nevertheless, in light of the ambiguity of that analysis, and because the Court, as discussed *infra*, can dispose of this claim on alternative grounds, the Court sets aside the County Defendants' *Rooker-Feldman* and domestic relations exception arguments for the time being.

Notwithstanding the absence of briefing on the matter, the Court turns to the elements of the right to access claim itself. *See supra* note 6. "[W]hen a plaintiff alleges a denial of the right to access-to-courts, he must usually plead specific prejudice to state a claim, such as by alleging that he missed court deadlines, failed to make timely filings, or that legitimate claims were dismissed because of the denial of reasonable access to legal resources." *Ortloff v. United States*, 335 F.3d 652, 656 (7th Cir. 2003), *abrogated*

*on other grounds by Ali v. Fed. Bureau of Prisons*, 552 U.S. 214 (2008); *In re Maxy*, 674 F.3d 658, 660–61 (7th Cir. 2012) ("[T]o satisfactorily state a claim for infringement of the right to access, [plaintiffs] must also allege an actual injury. . . . That is, they must allege that some action by the [defendant] has frustrated or is impeding an attempt to bring a nonfrivolous legal claim." (collecting cases)). And indeed, the prejudice to be alleged must relate to the underlying case, for right to access "cases rest on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 414–15 (2002) ("[T]he very point of recognizing any access claim is to prove some effective vindication for a separate and distinct right to seek judicial relief for some wrong.").

   The right to access the courts, in other words, does not protect one's ability to file unsolicited, frivolous documents, and Plaintiff's complaint does not suggest that he was attempting to do otherwise. *See Bill Johnson's Rests. v. NLRB,* 461 U.S. 731, 743 (1983) ("[B]aseless litigation is not immunized by the First Amendment right to petition."); *Lewis v. Casey*, 518 U.S. 343, 353 n.3 (1996) ("Depriving someone of an arguable . . . claim inflicts actual injury because it deprives him of something of value . . . . Depriving someone of a frivolous claim, on the other hand, deprives him of nothing at all . . . .").

   Plaintiff initially describes the intended filing simply as a "motion." ECF No. 1 at 5. He later clarifies that the motion related to his "standing challenge of whether . . . Flynn" was "eligible to adjudicate [his] case." ECF No. 34 at 4. Considering the entirety of this record, along with the circumstances of Case No. 2006FA6891 of which the Court takes judicial notice, as well as the Court's previous order rejecting Plaintiff's repeated

contentions regarding Flynn's status as reserve judge, ECF No. 27,[7] allows only for the conclusion that the "papers" that Plaintiff intended to file were frivolous. Because he fails to plausibly allege that the unnamed clerk's failure to file his papers prejudiced him with respect to some legitimate, non-frivolous action he sought to undertake in Case No. 2006FA6891, he fails to state a claim for unconstitutional denial of his access to the courts. *See Kaprelian v. Barrett,* No. 14-CV-546, 2015 U.S. Dist. LEXIS 6110, at *9–10 (E.D. Wis. Jan. 20, 2015) ("Plaintiff's access-to-courts claim appears to be flawed because Plaintiff has failed to show how the alleged interference precluded him from litigating a meritorious claim."), *aff'd on other grounds,* 607 F. App'x 583 (7th Cir. 2015).

But irrespective of this deficiency, the viability of this claim would nevertheless be tenuous. In *Snyder,* the Seventh Circuit addressed the plaintiff's allegation that a court clerk unconstitutionally denied him access to the courts when the clerk removed the plaintiff's technically compliant pleadings from the docket and returned them to the plaintiff, refusing to allow their filing. 380 F.3d 279.

In analyzing whether such an allegation stated a constitutional claim, the Seventh Circuit concluded that "the constitutional right to access" is not "sufficiently broad to encompass" the plaintiff's claim. *Id.* at 291. Because there existed "avenues to correct" this "mistake[]," the plaintiff had not been unconstitutionally denied access to the courts. *Id.* at 292 (Easterbrook, J., concurring) ("How can [the clerk's] act . . . be thought

---

[7]The Court therein concluded that Flynn appeared to have been properly appointed as a reserve judge. ECF No. 27 at 3 & n.2.

to deprive anyone of 'access' to the courts, given the litigant's opportunity to ask a judge to direct the clerk to accept and file the paper?").

Similarly, Plaintiff was not unconstitutionally denied access to the courts because there remained avenues in the state court system to attempt to correct the clerk's failure to file his papers. *Kaprelian*, 2015 U.S. Dist. LEXIS 6110, at *9 ("He was able to petition the Wisconsin Supreme Court for relief. . . . [E]ven assuming someone in the clerk's office expressly refused to file an otherwise proper [filing], the availability of a writ of mandamus under Wisconsin law provides an adequate remedy to Plaintiff." (citing Wis. Stat. §§ 809.51, 809.71 and *Snyder*, 380 F.3d at 292)).

In other words, even if Plaintiff had sufficiently pleaded the prejudice aspect of a right to access claim, *Snyder* would appear to nevertheless bar Plaintiff's claim that the unnamed Milwaukee County Circuit Court clerk violated his constitutional rights by not filing his papers in Case No. 2006FA6891. And because this is not an issue that Plaintiff could resolve through amendment of his complaint, the Court may dismiss this claim with prejudice outright without granting leave to amend. *Doe v. Village of Arlington Heights*, 782 F.3d 911, 919 (7th Cir. 2015) (citing *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014)).

### 5.2 The Arrest

Plaintiff also alleges that he was subjected to an unconstitutional false arrest when two non-party Milwaukee County Sheriff's Deputies arrested him on August 14, 2023. ECF No. 1 at 2. For the reasons discussed herein, the Court is satisfied that this claim is inextricably intertwined with the state court's judgment in Case No. 2006FA6891 such that the Court lacks jurisdiction to review it and that, in any event, it would fail for failure to state a claim.

Plaintiff was arrested after the unnamed clerk, presumably having discovered Plaintiff's identity and the commitment order to which he was subject by looking up his case, called for law enforcement. *Id.* ("[T]wo Milwaukee County Sheriff's deputies . . . appeared . . . informing [Plaintiff] they were called by the clerk's office to arrest [him]."). Plaintiff does not dispute that he was subject to a commitment order imposed by the state court for nonpayment in Case No. 2006FA6891. *Id.* at 4 (acknowledging commitment order). By challenging his arrest pursuant to that commitment order, Plaintiff challenges the validity or legitimacy of the commitment order itself. *Rooker-Feldman* prohibits the Court from entertaining such a challenge. *See Ali Nadzhafaliyev v. Dyslin,* No. 19 C 2590, 2021 U.S. Dist. LEXIS 175840, at *4–7 (N.D. Ill. Sept. 16, 2021) ("Plaintiff's injury—his civil commitment—is inextricably intertwined with the state court's orders finding him in need of inpatient mental health services. . . . Plaintiff's claims that he was wrongfully detained directly challenge the state court's commitment order. . . . [T]his claim boils down to a request that the Court review the state court's conclusion, which the Court cannot do under *Rooker-Feldman*." (citations omitted)). That conclusion requires that the Court dismiss Plaintiff's false arrest claim "for lack of federal jurisdiction." *Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) ("When the *Rooker-Feldman* doctrine applies, there is only one proper disposition: dismissal for lack of federal jurisdiction. . . . [T]he plaintiff cannot refile in federal court." (citing *T.W. v. Brophy*, 124 F.3d 893, 898 (7th Cir. 1997))).

Even if the Court had jurisdiction to consider this claim, however, the Court would nevertheless conclude that Plaintiff fails to state a false arrest claim. First, none of the individuals that Plaintiff names as Defendants were personally involved in the arrest, and "[t]o be liable for a

false arrest, a defendant must have been personally involved in the wrongful arrest either by making the arrest himself or by causing it to happen . . . ." *Jordan v. Krausz*, No. 17-cv-434-JPG-DGW, 2017 U.S. Dist. LEXIS 191634, at *7 (S.D. Ill. Nov. 20, 2017) (citing *Acevedo v. Canterbury*, 457 F.3d 721, 723 (7th Cir. 2006)). Plaintiff names Ball—Milwaukee County Sheriff—as a Defendant, but he does not suggest that she had any personal involvement in his arrest.

Moreover, to state a claim for false arrest, the plaintiff must allege that "there was no probable cause for his arrest." *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012) (citing *Williams v. Rodriguez*, 509 F.3d 392, 398 (7th Cir. 2007)). The same is true with respect to a seizure under a commitment order. *Gutierrez v. May*, No. 91-3448, 1993 U.S. App. LEXIS 21915, at *5–6 (7th Cir. Aug. 25, 1996) ("A civil commitment is a seizure and, like an arrest, may be made only upon probable cause." (citing *Villanova v. Abrams*, 972 F.2d 792, 795 (7th Cir. 1992))).

Plaintiff not only fails to plead an absence of probable cause, but his allegations concede its existence. "Probable cause exists if 'at the time of the arrest, the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Thayer*, 705 F.3d at 247 (quoting *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009)). "This is an objective inquiry; we do not consider the subjective motivations of the officer." *Id.* (citing *Whren v. United* States, 517 U.S. 806, 810 (1996)).

Generally, "a person arrested pursuant to a facially valid warrant cannot prevail on a § 1983 claim of false arrest." *Williamson*, 714 F.3d at 441–42 (citing *Brooks v. City of Aurora*, 653 F.3d 478, 483 n.5 (7th Cir. 2011) and

*Juriss v. McGowan*, 957 F.2d 345, 350 (7th Cir. 1992)). "[T]his is so even if the arrest warrant is later determined to have an inadequate factual foundation." *Id.* at 443 (quoting *Juriss*, 957 F.2d at 350–51 and collecting cases); *see also Brooks v. City of Chicago*, 564 F.3d 830, 832 (7th Cir. 2009) ("The existence of an outstanding warrant supports probable cause for an arrest." (citing *United States v. Thornton*, 463 F.3d 693, 698 (7th Cir. 2006) and *Juriss*, 957 F.2d at 350)). An exception exists where the arresting officers knew that the arrest warrant was not supported by probable cause. *Juriss*, 957 F.2d at 350–51 (citing *Malley v. Briggs*, 475 U.S. 335, 345 (1986) and *Olson v. Tyler*, 771 F.2d 277, 281 (7th Cir. 1985)); *Walsh v. Kaluzny Bros.*, No. 14 C 3412, 2017 U.S. Dist. LEXIS 68056, at *22 (N.D. Ill. May 4, 2017) ("In order to state a claim for false arrest when the arrest is made pursuant to a warrant, the plaintiff must show that the warrant was facially invalid or that the officers who made the arrest knew that the warrant was issued without probable cause." (citing *Williamson*, 714 F.3d at 444)).

Plaintiff concedes that the arresting deputies purported to arrest him based on a warrant they discovered on "the computer." ECF No. 1 at 2. Plaintiff alleges that no one showed him a copy of this warrant, but he does not allege that the arresting deputies, notwithstanding their reference to the warrant, knew that they lacked probable cause to arrest him or that the warrant was facially invalid.[8] And as noted *supra* Section 5.1, Plaintiff concedes to the existence of the commitment order to which he was subject,

---

[8]Plaintiff alleges that "the computer records used by the plaintiffs [sic] and their subordinates were knowingly and intentionally falsified by underqualified and unqualified members of the Wisconsin judicial system," ECF No. 1 at 4, but that is not the same as pleading that the *arresting deputies knew* that the computer records were falsified, and it is also not the same as pleading that the warrant was facially invalid.

and the Court has taken judicial notice of the fact that such an order was issued against Plaintiff in Case No. 2006FA6891 in July 2022 and was not canceled until August 21, 2023. The only reasonable inference to be drawn from both Plaintiff's allegations, the state court record, and the warrant itself, ECF No. 32-2, is that the arresting deputies objectively had probable cause to arrest him.

For all these reasons, Plaintiff's false arrest claim is subject to dismissal without prejudice for lack of jurisdiction.

### 5.3 The Subsequent Detention

In addition to claiming that his arrest was unconstitutional, Plaintiff alleges that he was subsequently "illegally detained"[9] in the Milwaukee County House of Correction and that the conditions of his detention constituted cruel and unusual punishment. ECF No. 1 at 3.

### 5.3.1 The Detention Itself

"Claims of unlawful pretrial detention all fall under the Fourth Amendment." *Crowder v. Barrett*, No. 22-1899, 2023 U.S. App. LEXIS 10461, at *9–10 (7th Cir. Apr. 28, 2023) (citing *Manuel v. City of Joliet*, 580 U.S. 357 (2017) and *Lewis v. City of Chicago*, 914 F.3d 472, 479 (7th Cir. 2019)). "Arrest and detention are seizures under the Fourth Amendment and therefore must be justified by probable cause for their *entire duration*." *Id.* at 10 (citing *Lewis*, 914 F.3d at 476–77) (emphasis added). The Court will therefore evaluate whether Plaintiff has sufficiently pleaded that he continued to be detained without probable cause following his arrest.

---

[9]Plaintiff again fails to name as a defendant—whether by name or as John or Jane Does—any of the individuals who allegedly "illegally detained" him following his arrest.

At least for the time of his arrest to August 17, 2023, Plaintiff has not sufficiently stated a claim that he was detained without probable cause. Plaintiff concedes that when he asked officials why he continued to be detained, they told him it was because "the computer said so," presumably referring to the warrant for Plaintiff's commitment. ECF No. 1 at 4; ECF No. 32-2. He also concedes, and state court records reflect, that he continued to owe unpaid sums required "to fulfill the purge requirements in the commitment order." ECF No. 1 at 4. Plaintiff did not tender the money owed "to [his] ex-wife's attorney" until Friday, August 17, 2023. *Id.* It would therefore appear that authorities had probable cause to continue his detention at least up to that point. The Court will therefore dismiss Plaintiff's claim that he was unlawfully detained from August 14, 2023 to August 17, 2023 for failure to state a claim.

But the question remains whether he has stated a claim for unlawful detention following his payment of the money owed on Friday, August 17, 2023, to Tuesday, August 21, 2023. Plaintiff alleges that even after he paid, there was "an additional delay" such that he was not ultimately released until four days later. *Id.* He alleges that these delays were attributable to "underqualified participants . . . taking specific actions to deprive" him of his liberties. *Id.* In other words, he alleges that even after he fulfilled the requirements to purge the commitment order, individuals in the state court system nevertheless intentionally delayed matters to violate his rights and prolong his detention. *Id.*[10]

---

[10]Although it is unclear at this juncture, it is entirely possible, indeed likely, that this delay was attributable to standard administrative processing protocols. Plaintiff does not specify to whom he tendered the payment, at what specific time, or in what form; each of these factors could have contributed to the delay.

The Court here pauses to address the County Defendants' umbrella argument that the Court should not consider any of the County Defendant-related claims on grounds of either *Rooker-Feldman* or the domestic relations exception. The Court does not believe that these doctrines deprive it of jurisdiction to consider whether Plaintiff was unlawfully detained during the above-noted four-day period. While Plaintiff's arrest and initial detention for nonpayment in Case No. 2006FA6891 could be deemed "'inextricably intertwined' with a state court determination," *Remer*, 205 F.3d at 996 (citation omitted), the continued detention following his payment to purge the commitment order is more attenuated from the state court's actions. Indeed, it is not clear that Plaintiff's continued detention is attributable to any action or directive by the state court in Case No. 2006FA6891 at all. Plaintiff suggests that it was not—that he should have been promptly released after purging the commitment order and that he was not because unnamed individuals intentionally delayed matters to "obtain their proverbial pound of flesh" from him. ECF No. 1 at 4. Accordingly, the Court will conclude, at this juncture and on the record now before it, that neither *Rooker-Feldman* nor the domestic relations exception prevent the Court from considering this claim.

The fact still remains, however, as noted *supra* note 9, that none of the Defendants named had any personal involvement in these allegations. None of the Defendants—including Ball—can be held vicariously liable for the allegedly unconstitutional actions of others. *Garvin v. Armstrong*, 236 F.3d 896, 899 (7th Cir. 2001) (citing *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467 (7th Cir. 1997)). Plaintiff will accordingly be granted leave to amend his complaint to identify as a defendant the individual(s)

responsible for this limited period of allegedly unlawful confinement. *Rohler v. TRW, Inc.*, 576 F.2d 1260, 1266 (7th Cir. 1978).

### 5.3.2 The Conditions of the Detention

The Court now moves on to Plaintiff's claim that the conditions of his detention constituted cruel and unusual punishment in violation of his Eighth Amendment rights. *Rooker-Feldman* does not prevent the Court's consideration of this claim. *See Dopson v. Corcoran*, No. 19-C-5077, 2020 U.S. Dist. LEXIS 105790, at *17–18 (N.D. Ill. June 17, 2020) ("However, [the plaintiff's] allegations relating to his treatment during confinement are not inextricably intertwined with the state court's determinations because they relate to the conditions of confinement. *Rooker-Feldman* does not bar such claims." (citing *O'Malley v. Litscher*, 465 F.3d 799, 805 (7th Cir. 2006))).

Plaintiff takes issue with various aspects of his confinement, including that he was disallowed transfer to another facility, subject to isolation, denied Huber privileges, inconveniently moved around, housed in unclean cells, deprived of food for 24 hours, deprived of his communication devices, and not allowed to contact anyone outside the jail for 52 hours. ECF No. 1 at 3. He specifically alleges that "others in the cell block were provided lunch and dinner meals in the common space," but that he was not provided food. *Id.* For the reasons discussed herein, Plaintiff has failed to state a conditions-of-confinement claim, but the Court cannot conclude—at least with respect to the alleged 24-hour deprivation of food and the allegedly unclean and infested cells—that he necessarily cannot do so. Accordingly, the Court will grant Plaintiff leave to amend on this claim.

"The Eighth Amendment prohibits the States from subjecting prisoners to conditions of confinement amounting to cruel and unusual punishment." *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019) (citing

Case 2:23-cv-01361-JPS   Filed 05/08/24   Page 20 of 34   Document 41

*Rhodes v. Chapman*, 452 U.S. 337, 345–47 (1981)).[11] However, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "Whether conditions of confinement are cruel and unusual must be judged in accordance with contemporary standards of decency." *Id.* (citing *Hudson*, 503 U.S. at 8 and *Rhodes*, 452 U.S. at 346). "If under contemporary standards the conditions cannot be said to be cruel and unusual, then they are not unconstitutional, and '[t]o the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* (quoting *Rhodes*, 452 U.S. at 347).

"As with a claim for deliberate indifference to serious medical needs, a conditions-of-confinement claim includes an objective and a subjective component." *Id.* (citing *Isby v. Brown*, 856 F.3d 508, 521 (7th Cir. 2017)). A conditions-of-confinement claim requires "an objective showing that the conditions are sufficiently serious—*i.e.*, that they deny the inmate 'the minimal civilized measure of life's necessities,' creating an excessive risk to the inmate's health and safety." *Id.* (quoting *Isby*, 856 F.3d at 521). The conditions alleged can be considered "in combination when they have 'a

---

[11]Irrespective of whether the Court considers Plaintiff's conditions of confinement under the Eighth Amendment or the Fourteenth Amendment Due Process Clause, the standard is the same. *Drake v. Velasco*, 207 F. Supp. 2d 809, 812 (N.D. Ill. 2002) ("Claims by pretrial detainees alleging unconstitutional conditions of confinement are governed by Fourteenth Amendment Due Process Clause rather than the Eighth Amendment's prohibition against cruel and unusual punishment. . . . The standard for analyzing a pretrial detainee's Fourteenth Amendment due process claim is identical to the standard employed in evaluating a convicted inmate's Eighth Amendment claim of cruel and unusual punishment." (quoting *Wysinger v. Sheahan*, No. 94 C 513, 1995 U.S. Dist. LEXIS 9355, at *8–9 (N.D. Ill. July 6, 1995) and *Vinegar v. Fairman*, No. 95 C 844, 1995 U.S. Dist. LEXIS 19376, at *10 (N.D. Ill. Dec. 29, 1995))).

mutually enforcing effect that produces the deprivation of a single, identifiable human need.'" *Budd v. Motley*, 711 F.3d 840, 843 (7th Cir. 2013) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) and citing *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006) and *Murphy v. Walker*, 51 F.3d 714, 721 (7th Cir. 1995)).

A conditions-of-confinement claim also requires "a subjective showing of a defendant's culpable state of mind," and "the state of mind necessary to establish liability is deliberate indifference to the inmate's health or safety." *Giles*, 914 F.3d at 1051 (quoting *Isby*, 856 F.3d at 521 and citing *Est. of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000)).

The Court begins with the objective component of the conditions-of-confinement claim. That Plaintiff was disallowed a transfer to another facility does not satisfy this component because it cannot be reasonably inferred that this condition created "an excessive risk to [Plaintiff's] health and safety." *Id.* (quoting *Isby*, 856 F.3d at 521). The same is true regarding Plaintiff's allegations that he was denied Huber privileges, inconveniently moved around, deprived of his communications devices, and disallowed from making a phone call. None of these conditions—whether considered individually or in totality—created "an excessive risk" to Plaintiff's health and safety. *Id.*

Plaintiff's claim that he was placed in several "infested, unclean cell[s]," ECF No. 1 at 3, is a closer call. It is not entirely clear how long Plaintiff claims to have been housed in these unclean conditions, and he fails to describe how the cells were "unclean" and by what they were "infested." Jail facilities must "provide reasonably adequate sanitation," *Wheeler v. Walker*, 303 F. App'x 365, 368 (7th Cir. 2008) (citing *Gillis*, 468 F.3d

at 493, and *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997)), but Plaintiff's bare assertion of "unclean, infested cell[s]" is so sparse that the Court is unable to evaluate whether the cells as he describes them could be considered to pose "an excessive risk" to Plaintiff's health and safety. *Giles*, 914 F.3d at 1051; *Staten v. Sehneider*, No. 20-cv-227-wmc, 2021 U.S. Dist. LEXIS 47846, at *6 (W.D. Wis. Mar. 15, 2021) ("[P]laintiff's allegations . . . are too vague to suggest that he was subjected to [cruel and unusual] conditions."). Was there some mere dirt on the floor and an unwelcome family of ants? As currently pleaded, Plaintiff fails to allege that the cells in which he was housed were such that they failed to comply with "contemporary standards of decency." *Giles*, 914 F.3d at 1051 (citing *Hudson*, 503 U.S. at 8 and *Rhodes*, 452 U.S. at 346). Such deficiencies could conceivably be remedied by amendment, however, and so the Court will grant Plaintiff leave to amend this aspect of his conditions-of-confinement claim.

The Court next turns to Plaintiff's claim that he was "placed in isolation without any explanation . . . for an additional 30 hours." ECF No. 1 at 3. The Court does not doubt that such a period of isolated confinement was unpleasant and uncomfortable, but Plaintiff alleges nothing to suggest that it created "an excessive risk" to his health and safety. *Giles*, 914 F.3d at 1051. For example, he does not allege that he suffered any "serious physical, mental, or psychological harm" from the solitary confinement. *Isby*, 856 F.3d at 523. "[P]rolonged segregated confinement may constitute an Eighth Amendment violation in some instances," *Giles*, 914 F.3d at 1051 (citing *Isby*, 856 F.3d at 521), but this is not one of them. *See generally Isby*, 856 F.3d at 521–24 (no conditions-of-confinement claim where plaintiff spent over ten years in solitary confinement); *Adams v. Godinez*, No. 95 C 3168, 1995 U.S.

Dist. LEXIS 17828, at *16 (N.D. Ill. Nov. 28, 1995) (no conditions-of-confinement claim where plaintiff spent ninety days in solitary confinement).

However, for purposes of the motion to dismiss stage, Plaintiff's allegation that he was deprived of food for twenty-four hours does satisfy this objective component of the conditions-of-confinement claim. "[T]he denial of food is not a *per se* violation of the Eighth Amendment." *Duncan v. Levenhagen*, No. 99-3697, 2000 U.S. App. LEXIS 8721, at *4 (7th Cir. Apr. 28, 2000) (citing *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999)). Whether a deprivation of food rises to the level of a conditions-of-confinement violation depends on "the amount and duration of the deprivation." *Id.* (citing *Reed*, 178 F.3d at 853). For example, "withholding food . . . for a mere twelve hours," without more, is not considered "a deprivation of sufficient magnitude to have violated the Eighth Amendment." *Id.* The Court cannot conclude, however, at this juncture and in the absence of briefing on the matter, that a twenty-four-hour deprivation of food cannot support a conditions-of-confinement claim.

Notwithstanding the foregoing, Plaintiff's conditions-of-confinement claim as currently pleaded is nevertheless deficient because he fails to allege that those unnamed persons who subjected him to these conditions did so with "deliberate indifference to [his] health or safety." *Giles*, 914 F.3d at 1051 (citing *Turbin*, 226 F.3d at 529). "Deliberate indifference requires that a prison official know of and disregard a substantial risk of serious harm to the inmate['s] health or safety." *Turbin*, 226 F.3d at 529 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Plaintiff does not allege that any prison official—let alone one that he has named as a Defendant—was even aware of the conditions of which he complains, let

alone that such official disregarded any risk to Plaintiff. Plaintiff does not, for example, allege that during the time of his confinement he alerted any staff member to the allegedly unclean conditions of his cell or to the fact that he had not received food during that 24-hour period. *See Staten,* 2021 U.S. Dist. LEXIS 47846, at *7 ("[P]laintiff has not alleged . . . that he complained to any of the defendants about the conditions of confinement and they responded with deliberate indifference.").

Although Plaintiff has failed to state a conditions-of-confinement claim, the Court cannot conclude that the deficiencies it has identified with this claim cannot be remedied by amendment. For example, Plaintiff may be able to amend his complaint both to sufficiently state this claim and to identify a proper defendant or defendants against whom it should be brought. Accordingly, the Court is constrained to allow him an opportunity to attempt to do so. *Rohler,* 576 F.2d at 1266.

### 5.4    Miscellaneous Claims and Allegations

The Court now turns to Plaintiff's remaining claims, several of which have already been adjudicated on their merits in previous cases.

#### 5.4.1    Malicious Prosecution

Plaintiff purports to bring a claim for malicious prosecution, although he does not specify against whom. ECF No. 1 at 4. The scope of this claim is unclear. Plaintiff uses the phrase just one time in a heading and then proceeds to discuss the underqualification of participants in the state court system, generally. For the reasons discussed herein, Plaintiff fails to state a claim for malicious prosecution.

A malicious prosecution claim is "litigable as a constitutional claim only if there were no adequate state tort remedy, but Wisconsin law

Case 2:23-cv-01361-JPS   Filed 05/08/24   Page 25 of 34   Document 41

provides such a remedy." *Cannon v. Newport*, 850 F.3d 303, 306 (7th Cir. 2017) (citing *Strid v. Converse*, 331 N.W.2d 350, 353–54 (Wis. 1983); *Julian v. Hanna*, 732 F.3d 842, 845 (7th Cir. 2013); and *Newsome v. McCabe*, 256 F.3d 747, 750–51 (7th Cir. 2001)). The Court cannot, therefore, entertain Plaintiff's malicious prosecution claim as one of constitutional scope.

But even when evaluated as a matter of state law, the claim nevertheless fails. Under Wisconsin law, a plaintiff must plead the following six elements to state a claim for malicious prosecution:

> (1) [A] prior institution or continuation of some regular judicial proceedings against the plaintiff . . . [;] (2) Such former proceedings must have been by, or at the instance of the defendant in this action . . . [;] (3) The former proceedings must have terminated in favor of the defendant therein . . . [;] (4) [M]alice in instituting the former proceedings[;] (5) [W]ant of probable cause for the institution of the former proceedings[;] and (6) [I]njury or damage resulting to the plaintiff from the former proceedings.

*Wilburn v. Nash*, 2018 Wisc. App. LEXIS 501, 917 N.W.2d 234, ¶ 11 (Wis. Ct. App. May 22, 2018) (quoting *Schier v. Denny*, 101 N.W.2d 35, 36 (Wis. 1960)). "Malicious prosecution claims are limited 'to those instances in which the defendant, as a private citizen, has taken affirmative, decisive steps to subject another person to the rigors of a lawsuit, without knowing that his claim is well grounded . . . .'" *Kundinger v. Stair*, 2023 Wisc. App. LEXIS 659, 994 N.W.2d 7, ¶ 14 (Wis. Ct. App. June 20, 2023) (quoting *Pollock v. Vilter Mfg. Corp.*, 126 N.W.2d 602, 606 (Wis. 1964)).

Plaintiff fails to plead that any of the named Defendants has, "as a private citizen, . . . taken affirmative . . . steps to subject" Plaintiff to "the rigors of a lawsuit," let alone one that the Defendant knows is not "well

grounded." *Id.* (quoting *Pollock*, 126 N.W.2d at 606). Plaintiff takes issue with actions taken against him by the state court in his family law/divorce case, but no Defendant initiated that case against him, and that case has not "terminated in favor" of any of the Defendants. *Wilburn*, 917 N.W.2d, ¶ 11 (quoting *Schier*, 101 N.W.2d at 36). Accordingly, Plaintiff's malicious prosecution claim fails. And because Plaintiff cannot remedy these deficiencies by amendment of his Complaint, the Court need not grant him leave to amend to attempt to do so. *Village of Arlington Heights*, 782 F.3d at 919 (citing *McCoy*, 760 F.3d at 684).

### 5.4.2 "Invalid Use of Legal Authority" and Abuse of Process

Plaintiff also takes issue with various actions undertaken in Case No. 2006FA689 that he characterizes as "invalid use[s] of legal authority," "abuse[s] of process," and "abuse[s] of authority." ECF No. 1 at 3–4. For example, he claims that "the computer records used by the plaintiffs [sic] and their subordinates were knowingly and intentionally falsified by underqualified and unqualified members" of the state judiciary and that "the Director of state courts intentionally" allows this to happen. *Id.* at 4. He claims that this has "happened for years to [his] ongoing detriment in the family law litigation" in Case No. 2006FA689 and that "[a]ll this was done under the supervision and approval of" Ashley. *Id.* He also insists that Flynn has been "impersonating" a reserve judge in Case No. 2006FA689, and he suggests that Ziegler and Skwierawski should also be held liable because Ziegler "is responsible" for the assignment of reserve judges and Skwierawski "is responsible for . . . inter-district assignment of reserve judges." *Id.* at 2, 6.

Case 2:23-cv-01361-JPS   Filed 05/08/24   Page 27 of 34   Document 41

These claims are subject to dismissal for myriad reasons, foremost of which is that Plaintiff already raised them and similar claims in Case No. 2:16-CV-00313-DEJ and Case No. 21-CV-001129-BHL. In each of those cases, the court rejected the claims on their merits. That precludes this Court from considering the same claims, as well as those that could have been brought at that time. *Idahosa v. Blagojevich*, 297 F. App'x 541, 542 (7th Cir. 2008) ("Claim preclusion prevents parties from relitigating claims that could have been (or were) raised in an earlier lawsuit that resulted in a final judgment on the merits." (citing *Cole v. Bd. of Trs. of the Univ. of Ill.*, 497 F.3d 770, 772 (7th Cir. 2007)).[12]

   But even if the Court were to consider the claims, they would nevertheless be subject to dismissal. To the extent that they are directed at Ashley and Flynn, for example, they are barred by judicial immunity. Judges are entitled to absolute immunity when the challenged actions are judicial in nature. *See Brunson v. Murray*, 843 F.3d 698, 710 (7th Cir. 2016). "Absolute immunity is a powerful shield attaching primarily to judicial functions—not to the person or position." *Id.* (citing *Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985)). "When a functional analysis of the responsibilities at issue reveals that they are judicial in nature, the actor is entitled to absolute immunity from damages no matter how erroneous the act or injurious the consequences." *Id.* (citing *Cleavinger*, 474 U.S. at 199–200); *see also Bolin v. Story*, 225 F.3d 1234, 1239 (7th Cir. 2020) ("This immunity applies even when the judge's actions are in error, malicious, or in excess of his or her

---

[12]"Although claim preclusion is an affirmative defense, *see* Fed. R. Civ. P. 8(c)(1), a district court may raise the issue sua sponte when preclusion clearly applies." *Morrow v. Brennan*, 676 F. App'x 582, 585 (7th Cir. 2017) (emphasis added) (citing *Turley v. Gaetz*, 625 F.3d 1005, 1013 (7th Cir. 2010) and *Kratville v. Runyon*, 90 F.3d 195, 198 (7th Cir. 1996)).

jurisdiction." (citing *Stump v. Sparkman*, 435 U.S. 349, 356 (1978))). Plaintiff dislikes actions taken by Ashley and Flynn in presiding over Case No. 2006FA689—for example, allegedly "conducting an illegal hearing," subjecting him to a commitment order he deems invalid, and "deny[ing]" him hearings, ECF No. 1 at 4 & n.2, 3—but judicial immunity protects Ashley and Flynn from claims such as these.

The same is true with respect to Skwierawski and Ziegler. Plaintiff takes issue with Skwierawski and Ziegler's appointment and assignment of reserve judges, but judicial immunity—or at the very least quasi-judicial immunity—protects them from such claims. *See John v. Barron*, 897 F.2d 1387, 1392 (7th Cir. 1990) ("Unlike a judge who fires a court employee, . . . , a judge who assigns a case . . . acts well within his or her judicial capacity." (citing *Forrester v. White*, 484 U.S. 219, 229 (1988))).

For all these reasons, Plaintiff's claims for invalid use of legal authority, abuse of authority, and abuse of process are subject to dismissal with prejudice. *See Bryant v. Chupack*, 93 F.4th 1029, 1033 (7th Cir. 2024); *Green v. Ill. State Bd. of Educ.*, 849 F. App'x 593, 593 (7th Cir. 2021) (affirming district court's grant of motion to dismiss with prejudice on ground of claim preclusion).

### 5.4.3    Diploma Privilege

Plaintiff also claims that Wisconsin's use of diploma privilege unconstitutionally subjects him to an under- and unqualified state judiciary. ECF No. 1 at 6. This claim is subject to dismissal because Plaintiff already raised a similar—if not identical—claim in Case No. 21-CV-001129-BHL, and that claim was dismissed on its merits. Plaintiff is therefore precluded from raising it again. *Idahosa*, 297 F. App'x at 542. The Court may

accordingly dismiss this claim with prejudice which, again, means that Plaintiff is not allowed to raise it in the future—in any court of competent jurisdiction, whether in this District or elsewhere.

**6.     CONCLUSION**

For the reasons provided herein, Plaintiff's claim for violation of his right to access the courts and petition his government is subject to dismissal for failure to state a claim. His claim for false arrest is subject to dismissal for lack of jurisdiction. His claim for unlawful detention following his arrest until August 17, 2023 is subject to dismissal with prejudice for failure to state a claim, as is his claim for malicious prosecution. His claim that Wisconsin's use of diploma privilege unconstitutionally subjects him to an under- and unqualified judiciary is dismissed with prejudice as precluded by claim preclusion, as are his claims of invalid uses of legal authority, abuse of authority, and abuse of process.

However, the Court will afford Plaintiff leave to amend his complaint to attempt to properly state a claim for unlawful detention from August 17, 2023 to August 21, 2023 and to identify the appropriate defendant(s) as to that claim. Plaintiff may also have leave to amend his complaint to attempt to properly state a conditions-of-confinement claim—solely regarding his alleged deprivation of food and the allegedly unclean and infested cells—and to identify the appropriate defendant(s) as to that claim. Plaintiff shall file an appropriate amended complaint on or before May 29, 2024. Failure to timely file an amended complaint will lead to dismissal of this case. Civ. L.R. 41(c) ("Whenever it appears to the Court that the plaintiff is not diligently prosecuting the action . . . the Court may enter an order of dismissal with or without prejudice.").

The Court is enclosing a copy of its amended complaint form. Plaintiff's amended complaint should only state facts relevant to the two discrete claims on which the Court has granted him leave to amend—his claim for unlawful detention from August 17, 2023 to August 21, 2023 and his conditions-of-confinement claim. Plaintiff should not include in his amended complaint any allegations regarding his other claims that the Court has herein dismissed. If Plaintiff continues to raise allegations regarding those other claims, the Court will strike the amended complaint from the record and may dismiss Plaintiff's case in its entirety. *See Schmidt v. Campanella Sand & Gravel Co.*, 49 F. App'x 647, 651 (7th Cir. 2002) (citing Fed. R. Civ. P. 41(b) and *LeBeau v. Taco Bell, Inc.*, 892 F.2d 605, 607 (7th Cir. 1989)).

Plaintiff is advised that his amended complaint must bear the docket number assigned to this case and must be labeled "Amended Complaint." An amended complaint supersedes the prior complaint and must be complete in itself without reference to the original complaint. *Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1057 (7th Cir. 1998) (citing *Wellness Cmty.-Nat'l v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995)). In such instances, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading." *Id.* (quoting *Fuhrer v. Fuhrer*, 292 F.2d 140, 144 (7th Cir. 1961)). In other words, any amended complaint must include, without reference to other documents, **all** of the allegations relevant to the two claims on which the Court has herein granted leave to amend, even if those allegations already appear in the original complaint.

By operation of this Order, all currently-named Defendants in this case will be dismissed. In the meantime, the Court will order the Clerk of Court to add John Does as placeholder defendants, pending Plaintiff's

submission of an appropriate amended complaint as instructed herein. As noted, Plaintiff must name as defendant(s) in his amended complaint the individual(s) responsible for his unlawful detention from August 17, 2023 to August 21, 2023 and for his alleged 24-hour deprivation of food and his housing in unclean, infested cells. If he is unaware of the identities of these individuals, he may at this juncture identify them as John or Jane Doe(s). Plaintiff should not list as defendants in his amended complaint anyone that the Court has, in this Order, dismissed as a Defendant from the action.

Accordingly,

**IT IS ORDERED** that Plaintiff Martin Hying's motion "for [a] hearing," ECF No. 40, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendants Anna Maria Hodges and Denita R. Ball's motion to dismiss, ECF No. 31, be and the same is hereby **GRANTED**; Defendants Anna Maria Hodges and Denita R. Ball be and the same are hereby **DISMISSED** as defendants from this action;

**IT IS FURTHER ORDERED** that Defendants Carl Ashley, Dennis Flynn, Audrey Skwierawski, and Annette K. Ziegler's motion to dismiss, ECF No. 28, be and the same is hereby **GRANTED**; Defendants Carl Ashley, Dennis Flynn, Audrey Skwierawski, and Annette K. Ziegler be and the same are hereby **DISMISSED** as defendants from this action;

**IT IS FURTHER ORDERED** that Plaintiff Martin Hying's right to petition/right to access claim, ECF No. 1 at 2, be and the same is hereby **DISMISSED with prejudice** for failure to state a claim;

**IT IS FURTHER ORDERED** that Plaintiff Martin Hying's false arrest claim, ECF No. 1 at 2–3, be and the same is hereby **DISMISSED without prejudice** for lack of jurisdiction;

**IT IS FURTHER ORDERED** that Plaintiff Martin Hying's claim that he was unlawfully detained from August 14, 2023 to August 17, 2023, ECF No. 1 at 3–4, be and the same is hereby **DISMISSED with prejudice** for failure to state a claim;

**IT IS FURTHER ORDERED** that Plaintiff Martin Hying's claim for malicious prosecution, ECF No. 1 at 4, be and the same is hereby **DISMISSED with prejudice** for failure to state a claim;

**IT IS FURTHER ORDERED** that Plaintiff Martin Hying's claim that Wisconsin's use of diploma privilege unconstitutionally subjects him to an under- and unqualified judiciary, ECF No. 1 at 6, be and the same is hereby **DISMISSED with prejudice** as precluded by claim preclusion;

**IT IS FURTHER ORDERED** that Plaintiff Martin Hying's claims of "invalid use of legal authority," "abuse of authority," and "abuse of process," ECF No. 1 at 4, be and the same are hereby **DISMISSED with prejudice** as precluded by claim preclusion;

**IT IS FURTHER ORDERED** the Clerk of Court add John Does as placeholder defendants to the docket, pending Plaintiff's submission of an appropriate amended complaint as instructed herein;

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a blank non-prisoner amended complaint form along with this Order; and

**IT IS FURTHER ORDERED** that Plaintiff Martin Hying be and the same shall hereby **FILE** an appropriate amended complaint as instructed, on or before **May 29, 2024**, or otherwise risk dismissal of his case.

Dated at Milwaukee, Wisconsin, this 8th day of May, 2024.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge